## MORRELL *versus* COOK.

Constables have authority to serve writs in personal actions, wherein the damages demanded do not exceed one hundred dollars.

In the service of such writs, constables may make valid attachments of real estate.

The service of such a writ by a constable, though it be not directed to him, is valid and effectual, unless objected to pending the suit.

Upon an execution, issued on the judgment in such suit, a constable may lawfully levy and set off real estate.

In construing a deed conveying a "farm," parole evidence is admissible to show whether it included a fenced lot, belonging to the grantor, upon which he had erected a tenement to let.

ON REPORT from *Nisi Prius*, WELLS, J., presiding.

TRESPASS on land in Parsonsfield.

On May 24, 1816, one Whitten purchased of Joseph Blazo a lot of land, situated on the *north* side of the north road, and containing an acre and a half. Whitten's house, store and stable were placed upon that lot. His barn and shed were on the *south* side of the road, upon land which he purchased of John Drown.

In 1826, Whitten purchased another piece, also on the *north* side of the road, containing a quarter of an acre, adjoining the one and half acre lot ; and built upon it an office, which he rented to an attorney at law. This quarter acre was called the office lot, and is the *locus in quo*. A witness testified that it had "always been enclosed in a fence by itself." Other witnesses testified that, after the attorney left the office, it continued to be rented by Whitten, for a dwellinghouse, to successive occupants, until the lot was attached, in 1845, by the plaintiff, on a writ against Whitten. In that suit, the plaintiff recovered judgment, and caused the lot to be seasonably levied and set off to him upon the execution.

For some acts done by the defendant upon the lot, this action of trespass *quare clausum* was brought. The defendant makes title in himself by a deed from Whitten to him made, in 1849, subsequent to the plaintiff's attachment. He also makes title in himself under a conveyance from Simeon Pease. It appeared that Pease claimed the land as follows : —

1. As assignee of a mortgage made, in 1831, by Whitten to McIntire and Tibbets, conveying, *the farm, which said Whitten then occupied and lived upon, situated upon the north road.*

2. As assignee of a mortgage, made by Whitten, in 1829, to Dalton, of a lot described in said mortgage as a lot of land where my house, store and stable stand, on the north side of the north road, containing one acre and a half, and is the same I purchased of Joseph Blazo, reference being had to his deed dated May 24, 1816.

3. As the immediate grantee of Whitten, under a deed made, in 1843, of land described as "a certain piece of land in Parsonsfield, being the farm on which said Whitten now

lives, occupies and improves, and being the same lot of land I purchased of John Drown, March 18, 1816." A reference to Drown's deed shows that the land which it conveyed was a large lot constituting the principal part of Whitten's farm and lying upon the *south* side of the road.

4. As the immediate grantee of Whitten by a deed made in 1847, conveying "the office lot," *the locus in quo.* This deed was given subsequent to the attachment made by the plaintiff, *but prior to the levy.* The defendant thus making title directly under Whitten, and also through Pease, objected to the validity of the attachment and levy, under which the plaintiff claims. The objection is, that though the writ was directed only to the sheriff or either of his deputies, it was in fact served and returned by a *constable,* who made the attachment, upon which the plaintiff relies. In that action Whitten appeared by attorney and answered to the suit, taking no exception to the service of the writ.

The *levy* of the land upon the execution recovered in that suit was also made by a *constable.*

The case was submitted to the Court for a legal decision, with jury powers in settling the facts.

*N. D. Appleton,* for the plaintiff.

*McIntire,* for the defendant.

Whatever title Pease had, became vested in the defendant. Pease had perfect title as follows ; —

1. Under the mortgage given in 1831, by Whitten to McIntire and Tibbetts. That mortgage conveyed the *farm* which Whitten then occupied and lived upon, situated upon the north road. That description was amply comprehensive enough to embrace, and did clearly embrace the office lot. That lot adjoined the other lands of Whitten ; was connected with them ; and equally with the rest constituted a part of the farm, and therefore passed by said mortgage.

2. Under the mortgage given in 1829, by Whitten to Dalton.

This mortgage also embraced the *locus in quo,* as is clearly established in *Drinkwater* v. *Sawyer,* 7 Maine, 366.

3. By the grant to Pease from Whitten, made in October, 1843. That was a grant of the farm on which Whitten lived, and plainly embraced the *locus in quo.* This grant, being expressly of the *farm,* could not be limited or restricted, by any reference in the deed to the sources from which Whitten had derived his title. *Vose* v. *Handy,* 2 Maine, 322; *Willard* v. *Moulton,* 4 Maine, 14; *Drinkwater* v. *Sawyer,* 7 Maine, 366; *Wing* v. *Burgis,* 13 Maine, 111; *Herrick* v. *Hopkins,* 23 Maine, 217; *Treat* v. *Strickland,* 23 Maine, 234; *Crosby* v. *Bradbury,* 20 Maine, 61; *Jameson* v. *Palmer,* 20 Maine, 425; *Field* v. *Huston,* 21 Maine, 69; *Marr* v. *Hobson,* 22 Maine, 321; *Moore* v. *Griffin,* 22 Maine, 350.

Whitten's deed to Pease, of 1847, was merely cumulative, being intended to settle all doubts. This expressly conveyed the *locus in quo,* and confirmed in Pease whatsoever title had ever belonged to Whitten. This conveyance was prior to the plaintiff's levy. By that levy the plaintiff therefore took nothing, unless by force of the pretended attachment on the writ. But no legal attachment was made on the writ. It was directed to the sheriff or his deputy, but was not served by either. It purports to be served, and an attachment to have been made by a constable, who was not required or authorized to serve it. The law on this subject was settled in case of *Adams* v. *Jewett,* 10 Maine, 426, which is relied on as decisive of this point.

It may be remarked also that the levy itself does not indicate any reference to any previous attachment. It relates solely to Whitten's interest at the time of the levy. *Hearsey* v. *Bradbury,* 9 Mass. 95; *Wood* v. *Ross,* 11 Mass. 271—276.

WELLS, J.—This case, which has once been presented for consideration, and which is reported, 31 Maine, 120, appears to involve other questions not then raised. It is there stated, that the plaintiff's writ against Simon J. Whitten, was directed to a constable. But the case now shows, that it was directed to the sheriff or his deputies only, and not to a constable. The writ was duly served by the constable and

the attachment properly made, but it was not directed to any constable. The defendant claims title to the *locus in quo* under Whitten, through Simeon Pease, and contends, that the attachment of the land was unauthorized and invalid.

In the case of *Hearsey* v. *Bradbury*, 9 Mass. 95, where a motion was made to abate the writ, because it was served by a constable, although not directed to him, such omission was held to be a matter of form and amendable.

It is not denied, that Whitten appeared by counsel and answered to the action, and that the judgment may be good, but it is insisted, that the attachment is void. The attachment was made according to the commands in the body of the precept, and it appears to have been acquiesced in by the parties to the suit.

By the statute, c. 104, § 34, the constable was fully authorized to make the service. No objection is perceived to the service of a writ by a constable duly empowered, though it is not directed to him. He might not be obliged to make it, unless the precept was directed to him, but he may do the act without such direction, which being a mere matter of form cannot be necessary to give it validity. And by considering him as having power to obey the commands in the writ, though not directed to him, he made a legal attachment of the land. The lien created by it was preserved, by a levy duly made within thirty days from the rendition of judgment.

In the case of *Adams* v. *Jewett*, 1 Fairf. 426, the plaintiff did not request the officer to serve the writ as constable, but the direction to the constable had been erased, and it was directed to the sheriff or his deputy when delivered to the officer, who was both a deputy and constable.

The only question reserved for the opinion of the Court was, whether the entry of the action and taking judgment should be regarded as an acceptance of the service as constable. The officer was not authorized by the plaintiff to serve the writ as constable; if he had been, then he would not have been in any fault, and the plaintiff would not have had any

cause of complaint against him. The question raised in the present case is not embraced in that decision, for in this case the plaintiff procured the constable to serve the writ, and the debtor did not object to the service.

The attachment of the land was made as the property of Whitten, February 18, 1845. The defendant contends, that Pease, under whom he claims, had acquired previously a title to it. Whitten was the owner of three parcels of land. Two of them lay on the north side of "north road;" one contained a quarter of an acre, the other an acre and a half. Both of them were conveyed to him by Joseph Blazo, the latter in 1816, the former in 1826, which is the *locus in quo.* Whitten's house, stable and store were on the lot containing the acre and a half. The third parcel, owned by Whitten, was on the south side of the "north road," was purchased by him of John Drown, and constituted the principal part of his farm ; he had a barn and shed on it.

Whitten conveyed to Pease, in October, 1843, "a certain piece of land in Parsonsfield, being the farm on which said Whitten now lives, occupies and improves, and being the same lot of land I purchased of John Drown," &c. By reference to the deed of John Drown, it would appear, that this parcel laid on the south of "north road, and therefore the *locus in quo* was not a part of it. But the defendant contends, that the *locus in quo* was a part of the farm, and that it is embraced in the description of the premises in this deed. The first inquiry which arises, is whether the evidence introduced shows it to have been a part of the farm. Robert T. Blazo testifies, that he is acquainted with the lot of land described in the writ, purchased by Whitten of Joseph Blazo in 1826, that Whitten afterwards built an office upon it for Noah Tibbets, which he subsequently occupied as an office, that it has been usually called the office lot, "and has always been enclosed by a fence by itself," and that the office was occupied after Tibbetts left it, by different tenants as a dwellinghouse, down to the time when Pease took his deed. He does not state at what period of time the office

was built, but his language would imply that the lot had been enclosed by itself at least ever since Whitten owned it. The inference to be drawn from the testimony is, that this lot was not occupied and improved as a part of the farm, nor did Whitten live on it. The burden of proof is on the defendant to establish the fact which he asserts, and it does not appear that he has done so.

The mortgage deed from Whitten to Dalton very clearly describes the lot conveyed by Blazo in 1816, and it appears by the evidence before mentioned, to have been entirely distinct and separate in its use from the *locus in quo.*

The mortgage deed from Whitten to McIntire and Tibbetts, in 1831, among other lands, also conveys " the farm, the said Whitten now occupies and lives on, situate on the north road in said Parsonsfield," &c. When this deed was made, and before and since, according to the testimony which has been referred to, the *locus in quo* did not constitute a part of the farm, and consequently it could not be embraced within the description of the premises, which the deed purports to convey.

The defendant does not appear to have had any title to the premises in controversy, of an earlier date than the plaintiff's attachment.                *Defendant defaulted.*